Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SEP 29 2022

SEAN F. McAVOY, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:22-CR-71-TOR-1 |
| Plaintiff, | Fed. R. Crim. P. 11(c)(1)(C) Plea Agreement |
| v. | |
| DAVID NABIEL AKHDARY (a/k/a "Nabiel Akhdary"), | |
| Defendant. | |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, and Defendant David Nabiel Akhdary, a/k/a "Nabiel Akhdary ("Defendant"), both individually and by and through Defendant's counsel, Bryan Whitaker, agree to the following Plea Agreement.

1. <u>Guilty Plea and Maximum Statutory Penalties</u>

Defendant agrees to enter a plea of guilty to the sole count of the Indictment filed on June 22, 2022, which charges Defendant with Possession with Intent to Distribute 40 Grams of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi), a Class B felony.

Defendant understands that the following potential penalties apply:

PLEA AGREEMENT - 1

1        a.    a term of imprisonment of not less than 5 years and up to 40 years;

2        b.    a term of supervised release of not less than 4 years and up to a lifetime;

3        c.    a fine of up to $5,000,000;

4        d.    a $100 special penalty assessment; and

5        e.    denial of certain federal benefits

2. **Supervised Release**

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

     a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

     b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

     c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. **The Court is Not a Party to this Plea Agreement**

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

PLEA AGREEMENT - 2

Defendant understands the following:

    a.    sentencing is a matter solely within the discretion of the Court;

    b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

PLEA AGREEMENT - 3

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5. <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

    a. the right to a jury trial;
    b. the right to see, hear and question the witnesses;
    c. the right to remain silent at trial;
    d. the right to testify at trial; and
    e. the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6. <u>Elements of the Offense</u>

The United States and Defendant agree that in order to convict Defendant of Possession with Intent to Distribute 40 Grams of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi), the United States would have to prove the following beyond a reasonable doubt.

    a. *First*, on or about ~~January 11, 2019~~ *June 6, 2022*, in the Eastern District of Washington, Defendant, knowingly possessed fentanyl, a Schedule II controlled substance;

PLEA AGREEMENT - 4

      b.    *Second*, Defendant possessed the fentanyl with the intent to distribute it to another person; and

      c.    *Third*, the substances possessed contained 40 grams or more of fentanyl.

7.    <u>Factual Basis and Statement of Facts</u>

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

In early 2022, Department of Homeland Security, Homeland Security Investigations (HSI) agents were investigating a drug trafficker operating in the Wenatchee, Washington area. This source of supply known to travel from Arizona to the Wenatchee area and engage in drug distribution activities. During the investigation, on January 17, 2022, Wenatchee Police officers initiated a traffic stop of a vehicle being driven by the Defendant, David Nabiel Akhdary. During the traffic stop, the Defendant provided a Tennessee Driver's License in a different name. The Defendant was subsequently released, however, upon learning of his true identity, Wenatchee police officers attempted to locate the Defendant at the Red Lion Hotel. The officers were unable to locate the Defendant. Later, the officers obtained arrest warrants for the Defendant for violations of obstructing a public servant and providing a false/misleading statement.

In March 2022, agents learned the source of supply was likely in Wenatchee and began conducting surveillance at the sources suspected location. During this

PLEA AGREEMENT - 5

surveillance, agents obtained information the room the source of supply was staying in was rented in the name of the Defendant.

In June 2022, agents obtained information the source of supply was again in the Wenatchee area. This information provided the hotel where the source of supply was staying. While conducting surveillance at this location, agents observed the source of supply meeting with the Defendant and loading several bags into the source of supply's vehicle and the Defendant's vehicle.

On June 5, 2022, Red Lion hotel staff contacted 911 reporting a suspicious odor coming from room #252. Upon arriving on scene, a Columbia River Drug Task Force Officer (TFO) was provided crystal-like shards obtained by the hotel cleaning staff outside room #252. A field test of the shards returned presumptive positive for methamphetamine.

Subsequently on June 6, 2022, Red Lion hotel staff contacted law enforcement and reported the Defendant was causing issues at the hotel. Red Lion staff indicated the Defendant requested to be moved from his room to room #114. Cleaning staff reported that morning, while cleaning the Defendant's old room, they observed leftover narcotics. Upon arriving at the hotel, a law enforcement officer observed multiple crystal shards consistent with the previous evening's shards and two blue pills consistent with M-30 fentanyl pills. Agents subsequently obtained a search warrant for the Defendant's new room, room #114.

While conducting surveillance on June 6, 2022, agents observed a male, matching the description of the Defendant, exit the hotel and meet with a male subject who arrived on foot. Officers proceeded to approach the Defendant and take him into custody. Located in a backpack the Defendant was wearing at the time of his arrest, were a small amount of crystal-like substance, and approximately 3,000 M-30 fentanyl pills. The backpack also contained a loaded 9mm Beretta handgun.

PLEA AGREEMENT - 6

In a post-arrest interview, the Defendant sated he was attempting to sell fentanyl pills to other individuals in the Wenatchee area on behalf of the source of supply. The Defendant further identified the gun as the source of supply's.

Subsequent Drug Enforcement Administration laboratory testing confirmed the package seized from the Defendant contained 3,399 tablets, containing 361.8 grams of N-Phenyl-N-[1-(2-phenylethyl)-4piperidinyl] propenamide (a/k/a fentanyl). The Defendant stipulates fentanyl is a Schedule II controlled substance. The Defendant further stipulates these acts occurred within the Eastern District of Washington.

8.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

9.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

    a.    Base Offense Level

The United States and the Defendant agree that the base offense level for Possession with Intent to Distribute 40 Grams of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi) is 28. U.S.S.G. § 2D1.1(c)(6).

    b.    Special Offense Characteristics

The United States and the Defendant agree that Defendant's base offense level is increased by 2 levels because Defendant possessed a firearm. U.S.S.G. § 2D1.1(b)(1).

PLEA AGREEMENT - 7

   c. <u>Acceptance of Responsibility</u>

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

   i. accepts this Plea Agreement;

   ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

   iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

   iv. provides complete and accurate information during the sentencing process; and

   v. does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

   d. <u>No Other Agreements</u>

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

   e. <u>Criminal History</u>

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be

PLEA AGREEMENT - 8

determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

10. <u>Incarceration</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), Defendant and the United States jointly recommend that Defendant be sentenced to a term of imprisonment between 60 and 87 months.

If the Court rejects this Plea Agreement, pursuant to Fed. R. Crim. P. 11(c)(5), Defendant and the United States agree that they each may withdraw from this Plea Agreement. If Defendant withdraws from this Plea Agreement, Defendant may withdraw his plea of guilty. If the United States withdraws from this Plea Agreement, the United States may prosecute Defendant for any and all criminal conduct involving or relating to the underlying facts and circumstances of this case and any other federal offense Defendant has committed.

11. <u>Supervised Release</u>

The United States and Defendant each agree to recommend 4 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

PLEA AGREEMENT - 9

   b. Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

   c. Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

12. <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13. <u>Mandatory Special Penalty Assessment</u>

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

14. <u>Payments While Incarcerated</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15. <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of

PLEA AGREEMENT - 10

sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

16. <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant agrees to waive the right to appeal the conviction and sentence in this matter if the Court imposes a prison term consistent with the terms of this Fed. R. Crim. P. 11(c)(1)(C) plea agreement.

If the Court sentences Defendant outside the Rule 11(c)(1)(C) and Defendant chooses <u>*not*</u> to withdraw, then the following applies: Defendant agrees to waive his right to appeal his conviction and sentence if the Court imposes a prison term no higher than the high end of the applicable guideline range as determined by the Court and imposes no more than 5 years supervised release. If the Court imposes a sentence higher than the high end of the applicable guideline range and/or greater than 5 years of supervised release, Defendant may appeal only the substantive reasonableness of his sentence.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

Defendant expressly waives Defendant's right to bring any motion for Compassionate Release other than a motion arising from the bases set forth in Section 1B1.13 of the Sentencing Guidelines.

PLEA AGREEMENT - 11

17. <u>Compassionate Release</u>

In consideration for the benefits Defendant is receiving under the terms of this Plea Agreement, Defendant expressly waives Defendant's right to bring any motion for Compassionate Release other than a motion arising from one of the specific bases set forth in this paragraph of this Plea Agreement. The United States retains the right to oppose, on any basis, any motion Defendant files for Compassionate Release.

The only bases on which Defendant may file a motion for Compassionate Release in the Eastern District of Washington are the following:

    a. <u>Medical Condition of Defendant</u>

        i. Defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia; or

        ii. Defendant is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which Defendant is not expected to recover.

    b. <u>Age of Defendant</u>

        i. Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or

PLEA AGREEMENT - 12

                75 percent of Defendant's term of imprisonment, whichever is less; or

    ii.    Defendant is at least 70 years old and has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which Defendant is imprisoned.

  c.    <u>Family Circumstances</u>

    i.    The caregiver of Defendant's minor child or children has died or become incapacitated, and Defendant is the only available caregiver for Defendant's minor child or children; or

    ii.    Defendant's spouse or registered partner has become incapacitated, and Defendant is the only available caregiver for Defendant's spouse or registered partner.

  d.    <u>Subsequent Reduction to Mandatory Sentence</u>

    i.    Defendant pleaded guilty to an offense which, on the date of Defendant's guilty plea, carried a mandatory minimum sentence; and

    ii.    after the entry of judgment, the length of the mandatory minimum sentence for Defendant's offense of conviction was reduced by a change in the law; and

    iii.    the application of the reduced mandatory minimum sentence would result in Defendant receiving a lower overall sentence.

  e.    <u>Ineffective Assistance of Counsel</u>

    i.    Defendant seeks Compassionate Release based on a claim of ineffective assistance of counsel arising from information that Defendant both

PLEA AGREEMENT - 13

        1. did not know at the time of Defendant's guilty plea, and

        2. could not have known, in the exercise of due diligence, at the time the Court imposed sentence.

18. <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a. this Plea Agreement shall become null and void;

    b. the United States may prosecute Defendant on all available charges;

    c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision about how to proceed, including a claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

PLEA AGREEMENT - 14

19. Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____  9/29/22
Patrick J. Cashman          Date
Assistant United States Attorney

PLEA AGREEMENT - 15

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____    9-29-22
David Nabiel Akhdary                              Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____    9/29/22
Bryan Whitaker                                      Date
Attorney for Defendant

PLEA AGREEMENT - 16